UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

    - against -

JOHN AGGREY-FYNN,

        Defendant.

------------------------------------------X

04 Cr. 1148 (RWS)

O P I N I O N

A P P E A R A N C E S:

    HONORABLE MICHAEL J. GARCIA
    United States Attorney for the
        Southern District of New York
    One St. Andrew's Plaza
    New York, NY 10007
    By:  VIRGINIA L. CHAVEZ, AUSA
         DANIEL L. STEIN, AUSA
        Of Counsel

    LIPMAN & BOOTH
    Attorneys for Defendant
    11 Broadway, Suite 967
    New York, NY 10004
    By:  CHRISTOPHER BOOTH, ESQ.
        Of Counsel



Sweet, D.J.,

Defendant John Aggrey-Fynn ("Aggrey-Fynn") has moved pursuant to Rule 33, Fed. R. Crim.P., to set aside the verdict rendered against him on October 28, 2005. Aggrey-Fynn argues that the Government presented an improper and prejudicial summation during which Assistant United States Attorney Virginia Chavez ("AUSA Chavez") alluded to facts not on the record and thereby became an unsworn witness. For the reasons set forth below, the motion is denied.

**Prior Proceedings**

On March 22, 2005, Aggrey-Fynn was charged in a superseding indictment with one count of conspiracy to import heroin in violation of 21 U.S.C. §§ 952, 960(a)(1) and 960(b)(1)(A) and one count of conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846. Aggrey-Fynn stood trial from October 24, 2005 to October 28, 2005, and a jury returned a guilty verdict only with respect to the charge of conspiracy to distribute and possess with intent to distribute heroin.

Aggrey-Fynn moved for a new trial under Rule 33, Fed. R. Crim. P., on October 28, 2005, and filed supplemental papers on November 8, 2005. The Government filed opposition papers on

1

November 15, 2005, and this motion was marked fully submitted on November 16, 2005.

**Evidence At Trial**

During trial, the Government presented the transcript of a wiretapped call, which was referred to as GX 7T-2 ("7T-2") by both parties. The wiretapped call recorded a conversation between two of the defendant's co-conspirators, "Maame" and "Ope." In closing argument, the Government interpreted portions of the 7T-2 transcript that alluded to numbers, arguing that those numbers represented drug weight. Defense counsel objected and during defense summation challenged the Government's interpretation.

The relevant section of each party's summation follows:

Gov: At 6:49 p.m. on July 18, just a short while after Johnny left Maame's apartment, Maame called Ope and said that she had gotten 23 pieces. This is a portion of Government Exhibit 7T-2, and it includes excerpts from pages 2 and 3, 9, and 24. Maame says he/she gave me 23 pieces ... And Ope says, when you deduct 7 from 23, then you get what? Then 16 remains. Maame says, yeah. Ope says, all of the 16, they should be two, five, two, five, but I marked them because the man's share is in it. They belong to myself and the man. I need to remove his and give them to him. Ope says to Maame later on in the conversation, so you will remove them in ones, eight of them to make it two. Now, if there is two five, two five, and 16 and eight makes two, that means there is 250 grams of heroin in each shirt.

Def: Objection. Objection. Move to strike, or approach.

2

Ct.: Ladies and Gentlemen, what you have to do is evaluate the testimony and determine whether or not any inference can be drawn from a fact which you find has been established by the evidence, and you're permitted to draw such an inference but it has to be a logical and a reasonable inference.

(Tr. 409-10.)[1]

\* \* \*

Gov: So, you will remove them in ones, eight of them to make it two. Bu[t] they are in 250, 250. 16 of these shirts had 250 grams of heroin each. Each of them made two, that is two kilograms. 250 times four equals one kilogram. 250 times eight is two kilograms. Ope later says, when you remove 12, that will be three. And Maame says, if eight are two then that means four, four, four make up one. Don't you see so? And Ope says to her, that's right, yes, four make up one. And Maame says, OK. And Ope says, another four. Another four make up two. So how many will that be if another four add to it? Maame says, if another four add to it – that is another four shirts with 250 grams of heroin each – it makes two, and if another four add to it, then it makes three. So that is 12. 12 shirts, each with 250 grams of heroin, that's three, three kilograms. Ope says, ah-hah, so the 12. And Maame says, ah-hah, make up three.

(Tr. at 410-11.)

\* \* \*

Def: The next phone call. 7T-2. Now, there is one thing that is clear from this phone call. And ... that's the second phone call after the thing has apparently arrived, there's this long conversation between New York and Ghana. And it's one thing is very clear ... The person Maame is talking about breaking them open, talking about in the collar,.. . that things were put inside, meaning the clothing. I did them very small. Small amounts so that as you look at the items you can't tell what's in them. They do mention numbers. I thought for sure there would be an expert in this case that would testify to tell you what these numbers mean. To tell you what based upon experience and history and investigation you could make of these numbers.

---

[1] "Tr." refers to the trial transcript.

3

> You didn't get that. You got a prosecutor who stood up at the end of the case and told you what she thinks it says 250, 25 means 250. It means 250 grams. It means 250 pounds? 250 ounces? 250 glassines? 250 envelopes? 250 dollars? 250 shirts? What does it mean? Guesswork, surmise, guilt by association. The federal government of the United States of America comes in, doesn't even provide any expert testimony about what that is. Here. It's a conversation. You read it. You figure it out. I went through that conversation many times. The numbers don't all add up. The prosecutor references one portion of the testimony. She doesn't know what that testimony - what those conversations mean. You don't know if they're talking about ounces, kilos, grams, lines, pounds, packages, suitcases, dollars. Is it reference to money, in one there is seven. I tried to follow the four times 25 equals one. What about there's seven and one? Where does that fit into it? I don't know and you don't know. Just because they say it, doesn't mean it's the same.

(Tr. at 432-33.)

**Discussion**

Rule 33 of the Federal Rules of Criminal Procedure entitles a defendant to a new trial only if "the interests of justice so require." Fed. R. Crim. P. 33. Because of their extraordinary nature, "motions for a new trial are disfavored in this Circuit." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995). While the trial court may weigh the evidence and the credibility of the witnesses on a Rule 33 motion, the Second Circuit has warned against "wholly usurping the role of the jury." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001). Accordingly, a motion for a new trial should be granted only where

4

the district court has "a real concern that an innocent person may have been convicted," after examining the totality of the evidence and considering objectively all of the facts and circumstances of the case. United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). In short, "[i]t is only when it appears that an injustice has been done that there is a need for a new trial 'in the interests of justice.'" Id.

The defendant bears the burden of showing that a new trial is warranted. See United States v. Sasso, 59 F.3d 341, 350 (2d Cir. 1995). Aggrey-Fynn contends that remarks made by the Government during summation alluded to facts that were not on the trial record but were known to AUSA Chavez based on her investigation of defendant and his co-conspirators. Specifically, Aggrey-Fynn contests the Government's statements which interpreted the transcript of 7T-2 and suggested that the numbers referenced in the conversation represented drug weight. Relying on the unsworn witness rule, Aggrey-Fynn asserts that AUSA Chavez's interpretation of the evidence adduced at trial injected her own personal beliefs into the trial process, when no foundation had been established through sworn testimony to support her conclusions. Aggrey-Fynn argues that such references during closing arguments transformed AUSA Chavez into an unsworn expert witness, thereby tainting the trial process with sufficient prejudice to warrant a new trial under Rule 33, Fed. R. Crim. P.

5

To prevail on a claim that a prosecutor engaged in misconduct during summation, a defendant must demonstrate that the allegedly improper remarks caused him "substantial prejudice," United States v. Bautista, 23 F.3d 726, 732 (2d Cir. 1994), by "so infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). Remarks of a prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)).

"Determination of whether there should be a reversal [for prosecutorial misconduct] requires an evaluation of the severity of the misconduct, the curative measures taken, and the certainty of conviction absent the misconduct." United States v. Rosa, 17 F.3d 1531, 1549 (2d Cir. 1994); see also United States v. Elias, 285 F.3d 183, 190 (2d Cir.), cert. denied, 537 U.S. 988 (2002). In making this determination, the court "must consider the objectionable remarks within the context of the entire trial," United States v. Espinal, 981 F.2d 664, 666 (2d Cir. 1992), reversing only if the remarks, "viewed against the entire argument before the jury, deprived the defendant of a fair trial." United States v. Pena, 793 F.2d 486, 490 (2d Cir. 1986) (internal quotation marks and citations omitted). Such a finding is generally made only on the basis of repeated improper statements by the prosecutor, not on

6

merely one or two isolated transgressions. See, e.g., United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999); United States v. Evangelista, 122 F.3d 112, 120 (2d Cir. 1997). Thus, "[i]t is a 'rare case' in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." United States v. Rodriquez, 968 F.2d 130, 142 (2d Cir. 1992) (citation omitted).

In People v. Paperno, 54 N.Y.2d 294, 445 N.Y.S.2d 119 (1981), the New York Court of Appeals explained the unsworn witness rule:

> Th[e] rule has no definitive contours, but generally stands for the proposition that the prosecutor may not inject his own credibility into the trial. Thus, we have reversed convictions where the prosecutor, to the prejudice of the defendant, has expressed his personal belief on matters which may influence the jury, has argued his own credibility on summation, has vouched for the credibility of the People's witnesses, or has, by cross-examination, suggested the existence of facts not in evidence... . Hence, the rule is founded upon the possible danger that the jury, impressed by the prestige of the office of the District Attorney, will accord great weight to the beliefs and opinions of the prosecutor.

Id. at 301, 445 N.Y.S.2d 119. See Morales v. Miller, 41 F. Supp. 2d 364 (S.D.N.Y. 1999).

In her closing statement, AUSA Chavez did interpret the 7T-2 transcript and did argue to the jury her belief about what was meant by the numbers in the conversation. No testimony, either expert or lay opinion, was introduced during trial to support her inference. However, the Second Circuit has held that numbers do

7

not constitute "drug code" and thus do not require an explanation from an expert witness. See United States v. Dukagjini, 326 F.3d 45 (2d Cir. 2003); United States v. Garcia, 291 F.3d 127, 139 (2d Cir. 2002); United States v. Cruz, 363 F.3d 187 (2d. Cir. 2004); United States v. Nersesian, 824 F.2d 1294, 1308 (2d Cir. 1987). Furthermore, the Second Circuit also has held that a case agent may not offer his/her lay opinion as to the meaning of the numbers mentioned in a wiretapped conversation. See United States v. Grinage, 390 F.3d 746 (2d Cir. 2004). As such, while it may have been somewhat unwise for AUSA Chavez to insert her opinion during summation regarding drug quantity, an essential element of the offense charged against Aggrey-Fynn, given the absence of sworn testimony on the issue, her remarks on summation were sufficiently mitigated such that a new trial is not warranted. See Morales, 41 F. Supp. 2d at 378 (holding that while it was "unwise" for the prosecuting attorney to use an out-of-court conversation with a witness to impeach that witness during cross-examination, thus injecting the prosecutor's own credibility into the trial, a new trial was not warranted.)

As the Second Circuit has repeatedly stated, "'[t]he government has broad latitude in the inferences it may reasonably suggest to the jury during summation.'" United States v. Zackson, 12 F.3d 1178, 1183 (2d Cir. 1983) (quoting United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989)). "A summation is not evidence. It is simply an attorney's argument to the jury on

8

the circumstances of the case. Its purpose is to explain to the jury how that party views the evidence the jury has seen and heard and to suggest to that body what significance or inference it should attach to or draw from the evidence under the relevant law charged by the trial court." United States v. Arboleda, 20 F.3d 58, 61 (2d Cir. 1994). See United States v. Guanti, 421 F.2d 792, 801 (2d Cir.), cert. denied, 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970).

AUSA Chavez's remarks during summation fit within the "broad latitude" offered counsel during closing arguments. She "is entitled to 'marshal all of the inferences which the evidence supported,'" Wade v. Fischer, No. 02 Civ. 9594 (RCC/DCF), 2005 WL 1903024, at *5 (S.D.N.Y. Aug. 10, 2005) (quoting United States v. Wilner, 523 F.2d 68, 73 (2d Cir. 1975)), and she did so. "A prosecuting attorney is not an automaton whose role on summation is limited to parroting facts already before the jury. [Sh]e is an advocate who is expected to prosecute diligently and vigorously, albeit without appeal to prejudice or passion." United States v. Wilner, 523 F.2d 68, 74 (2d Cir. 1975).

In addition, curative measures were taken, both by the Court and by defense counsel, to offset any potential harm created by AUSA Chavez's comments. See Nelson v. Hokes, No. 86 Civ. 2832, 1987 WL 6404, at *2 (E.D.N.Y. 1987) ("Considering these factors, this Court finds that the prosecutor's comments during summation,

although improper, do not warrant a reversal. It is significant that the trial judge, upon objections by the defense attorney, gave curative instructions thereby mitigating possible prejudice.) Upon hearing AUSA Chavez's remarks, defense counsel objected immediately and the Court offered the jury a reminder to "evaluate the testimony and determine whether or not any inference can be drawn from a fact which you find has been established by the evidence. . . [Y]ou're permitted to draw such an inference but it has to be a logical and a reasonable inference." (Tr. at 410.) Only after administering this instruction did the Court permit AUSA Chavez to continue her summation.

Defense counsel challenged the "logic and reasonable inference" of AUSA Chavez's interpretation during his summation. Directly confronting AUSA Chavez's conclusions, defense counsel argued to the jury:

> I though for sure there would be an expert in this case that would testify to tell you what these numbers mean. To tell you what based upon experience and history and investigation you could make of these numbers... You didn't get that. You got a prosecutor who stood up at the end of the case and told you what she thinks it says 250, 25 means 250. It means 250 grams. It means 250 pounds? 250 ounces? 250 glassines? 250 envelopes? 250 dollars? 250 shirts? What does it mean? ... Here. It's a conversation. You read it. You figure it out. I went through that conversation many times. The numbers don't all add up. The prosecutor references one portion of the testimony. She doesn't know what that testimony -- what those conversations mean. You don't know if they're talking about ounces, kilos, grams, lines, pounds, packages, suitcases, dollars. Is it reference to money, in one there is seven. I tried to follow the four times 25 equals one. What about there's seven and one? Where does that fit into it? I don't know and you don't

10

> know. Just because they say it, doesn't mean it's the same.

(Tr. at 432-33.) Defense counsel's summation characterized and emphasized AUSA Chavez's remarks as mere argument, as statements to accept only after engaging in critical analysis. By challenging the Government's summation in this manner, defense counsel assisted in minimizing the risk that the jury would "accord great weight to the beliefs and opinions of the prosecutor." Paperno at 301.

Finally, when the Court charged the jury, it specifically instructed that "there are some things that I have already told you are not evidence: the openings, the closings of counsel and the matters which have been stricken from the record. Questions aren't evidence; the answers are the evidence." (Tr. at 510). With respect to the transcripts, the Court further instructed, "[t]he transcripts were admitted into evidence. To the extent that you accept or reject the testimony of [the] interpreter, you may accept or reject the transcripts themselves as to the Twi and Ga conversations. You are the ultimate fact finders, so give the transcripts whatever weight you think they deserve." (Tr. at 520). The Court's jury instructions prevented any prejudice that Aggrey-Fynn might have faced from the prosecutor's remarks, and the jury is presumed to be able to understand and follow such instructions. See United States v. Potamitis, 739 F.2d 784, 790 (2d Cir. 1984).

11

In light of the trial court's statement to the jury immediately following AUSA Chavez's remarks, the defense counsel's summation challenging the interpretation of evidence offered by the Government, and the Court's jury instructions, AUSA Chavez's statement during summation did not so infect the trial to make the resulting conviction a denial of due process. See Darden, 477 U.S. at 181.

**Conclusion**

For the foregoing reasons, Aggrey-Fynn's motion for a new trial pursuant to Rule 33, Fed. R. Crim. P., is denied.

It is so ordered.

New York, NY
February  /(   , 2006

ROBERT W. SWEET
U.S.D.J.